SCANNED

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

U.S. DISTRICT COURT
PORTLAND, MAINE
RECEIVED AND FILED

2005 DEC 12 P 12: 34

BY ________
DEPUTY CLERK

ARTHUR D'AMARIO III

v. C.A. No. 5-236

PATRICK C. LYNCH

OBJECTION

Now comes Petitioner to hereby object to Respondent's motion to dismiss, for the reasons asserted in his accompanying memorandum of law and Declaration.

Petitioner, pro se,

12-8-05

Arthur D'Amario 02989-070
U.S. Medical Center
POB 4000
Springfield, MO 65801-4000

CERTIFICATION

I certify that on Dec. 8, 2005, I mailed a copy to Gerald J. Coyne, 150 S. Main St., Providence, RI 02903, by prepaid mail.

petitioner, pro se

Scanned by: bfa
Folder Location: Mon
File Name: dbh04cv232
Names of Attachments, if any:

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ARTHUR D'AMARIO III

v. C.A. No. 5-236

PATRICK J. LYNCH

MEMORANDUM

Petitioner objects to the State's motion to dismiss, which raises fact-dependent issues. Petitioner is submitting a Declaration to identify facts and evidence not in his control which would prove that (a) he has been banished from every Rhode Island court since Aug. 30, 1995 and is being forcibly restrained from even appearing there; and (b) the RI Attorney General has had ex parte contact with Petitioner's federal jailers for the malicious purpose of illegally prolonging his federal custody to keep him away from Rhode Island.

CUSTODY

As his Declaration demonstrates, Petitioner has been in custody as an inmate or supervised probationer every day since his state arrest on Dec. 28, 1995. U.S. v. Molak, 276 F.3d 45, 48 (1st Cir. 2002) (ex-prisoner serving a term of supervised release remains in custody for habeas corpus purposes). Supposedly the result of a bizarre "fluke," all of his sentences have been implemented consecutively, even though no court ordered consecutive terms. Until the last sentence in the series is fully served, Petitioner can invoke § 2254 to challenge any one of them. Garlotte v. Fordice, 515 U.S. 39 (1995); Carafas v. LaVallee, 391 U.S. 234, 237-38 (1968) (completion of revocation sentence did not moot § 2254 challenge to denial of state parole as to petitioner who was serving a consecutive sentence imposed by a different court).

Four months after his first state sentence expired, a prisoner filed a § 2254 claim while serving a second state sentence imposed by a different judge at a different time. The district court dismissed for lack of jurisdic-

tion as petitioner was no longer held on the first sentence. That order of dismissal was reversed. Foster v. Booker, 296 F.3d 947, 948-49 (10th Cir. 2002). Foster was deemed "in custody" for jurisdictional purposes with respect to his first sentence "because that sentence is part of a consecutive series of sentences which he is still serving." Id. at 950.

A prisoner was required to serve the remainder of an armed robbery sentence (as a violator) before he could begin serving his new sex offense sentence imposed by a different court at a different time:

> "The effect of any error as to the former was to delay the start of the latter. Thus, because any remedy we grant DeFoy might effect his release date for the sentence he is currently serving, we conclude that under Garlotte and Foster, DeFoy's habeas petition is not moot."

DeFoy v. McCullough, 393 F.3d 439, 442 (3d Cir. 2005) (footnote omitted).

These new authorities have applied Garlotte to situations where the consecutive sentences are administered by different courts on different dates.

DeFoy went on to add that,

> "The doctrine of collateral consequences applies where a former prisoner can demonstrate he will suffer some collateral consequences if his conviction is allowed to stand." Id. at n.3.

Here, the collateral consequences are readily ascertainable. The RI state felony and misdemeanor have produced criminal history points exploited to inflate four subsequent federal sentences, including the one currently being served. Invalidation of the state convictions would require all four federal courts to resentence Petitioner in a lower Guidelines Sentencing Range. U.S. v. Pettiford, 101 F.3d 199 (1st Cir. 1996). Minus those CHC points, his present term would have to be reduced by at least one month.

Finally, Petitioner calls attention to his attached documentation from Aug. 2, 2000. BOP Regional Director G.L. Hershberger correctly computed his state and federal RI sentences as concurrent and ordered his immediate release retroactive to June 9, 2000.

But the handwritten notes of FMC Rochester case manager Michelle Sachs record that a few hours later that dual jail credit was suddenly revoked.

Petitioner's Declaration attests that on Aug. 2, 2000, RI Asst. Atty. Gen. Alan Goulart (among others) contacted federal officials in Minnesota

and succeeded in pressuring them to corrupt Petitioner's jail credit. BOP officials at FMC Rochester and Central Office in Washington were intimidated into fraudulently miscomputing both RI sentences. Absent the tampering, Petitioner is free on Aug. 2, 2000, and his supervised release expires in 2003. He is in prison today only because of the illegal, back-door intimidation tactics of the State and Marshals.

EXHAUSTION

The State dreamily avers that Petitioner can pay a $500 fine and obtain appellate review, overlooking the habeas petition's sworn assertions that he is banned not only from the courts and courthouse, but even from the entire state of Rhode Island. Pertinent court orders are attached, entered by Judge Smith and Judge Young in recent federal proceedings.

With respect to Petitioner's state sentence, that challenge was exhausted to the state's highest court. State v. D'Amario, 725 A.2d 276 (R.I. 1999) (failing to address some issues fairly presented in Brief).

The judgments of Oct. 9, 1996 and March 13, 2000, were not appealed. Petitioner had counsel both times. Failure to appeal, or to move to withdraw a coerced plea, is the fault of counsel, not the client. The very nature of the RI probation conditions described in D'Amario prohibited Petitioner from filing "any" pleading himself. He had no access to the RI Supreme Court. This is a defective state corrective process for there is no "available procedure." 28 U.S.C. § 2254(c).

On Oct. 17, 2005, the RI Supreme Court banned Petitioner from filing a habeas corpus petition challenging the computation of state jail credit (order attached). The Court is pretending that a Superior Court judge can control what pleadings are filed in a higher court where he doesn't sit.

Incredibly, the Superior Court on March 7, 1996, gave no notice, held no hearing, and made no findings. It remains a mystery why Petitioner was sanctioned. His Declaration offers a politically incorrect reason.

In fact, his 7-year-long federal ordeal commenced in early 1999 when then-Judge Richard J. Israel wrote anonymous, crank love letters to the ex-girlfriend of Petitioner, after reading in the Providence Journal that she had a no-contact order against him. Judge Israel committed a crime to

violate Petitioner's probation and run him out of town.

The State failed to identify exactly what "remedy" is "available" from the RI courts. Nor has the State mentioned that in Petitioner's postconviction matter, No. PM 01-1305, Judge Clifton deviously scheduled an evidentiary hearing for March 12, 2005, fully aware that Judge Smith had just denied Petitioner's motion to transfer his supervised release from Arizona to Rhode Island. When Petitioner was ordered by Judge Smith not to appear, Judge Clifton defaulted him and dismissed under Rule 41(b). An appeal could not be perfected because Petitioner was confined in the desert and had no RI counsel and no money. Structural errors are caused by biased judges and defy harmless error review. Becht v. U.S., 403 F.3d 541, 547 (8th Cir. 2005).

The weird orders banishing Petitioner from "any" court and from the entire state have forcibly prevented him from seeking relief in RI courts since the 1996 coerced plea. A delay in state appellate proceedings that reached eight years resulted in an unconditional grant of a § 2254 writ of habeas corpus. Turner v. Bagley, 401 F.3d 718 (6th Cir. 2005). The PLRA does not mean that a prisoner must further pursue a grievance once no remedies are available, nor is he required to make appeals to administrators who will not read or consider them. Brown v. Valoff, 422 F.3d 926, 935-36 &n.10 (9th Cir. 2005). Whether the state corrective process is structurally defective is a question of fact. Braham v. Clancy, 425 F.3d 177 (2d Cir. 2005). (See Petitioner's Declaration.)

THE ATTORNEY GENERAL MUST BE DISQUALIFIED

Petitioner was charged with threatening physical harm to assistant attorneys general. He now asserts that there was misconduct by those same officials in preparing affidavits to support warrants, and that they coerced a plea from him by denying him essential medical care and nearly killing him. Because the plea compelled Petitioner to dismiss his civil suit against the State, the RI Attorney General has an economic incentive to oppose justice, as well as a strong interest in suppressing evidence of official abuses. As an ethical matter, the RI Attorney General cannot defend this action and the court should enter an order of disqualification. Soon Petitioner will be out on supervised release, and his special conditions forbid contact with the RI prosecutors.

'STATE v. D'AMARIO' IS NOT A FACTUAL RECORD

Both parties have referenced State v. D'Amario, 725 A.2d 276 as a procedural record. The purported "facts" recited in the opinion cannot be relied on to form a state court record of findings.

Those "facts" were culled entirely from a Rule 46(g) bail revocation hearing in August 1996. The State only had to meet the weak standard that the trial judge is "reasonably satisfied" that a bail condition was breached. Judge Goldberg said at hearing that Petitioner's right to defend was left to her discretion. She denied discovery and cross-examination. She did not let Petitioner present witnesses or even know their names. It's an unreliable judgment and not factual findings made following a trial.

PETITIONER DENIED VIOLATING PROBATION

Referencing an erroneous WestLaw cite, the State at p.2 of its Memorandum mistakenly asserts that Petitioner waived rights and admitted to being a probation violator on March 13, 2000. This stems from an error of memory committed by Judge Clifton in denying a post-trial motion in 2001.

The transcript from March 13, 2000, plainly reveals that Petitioner contested the Rule 32(f) Notice of Violation on both facts and law. The Notice falsely accused him of writing crank letters to his ex-girlfriend. Judges mailed those letters to frame him and his lawyer, Ed Roy, played along with it.

CONCLUSION

As a matter of law, Petitioner is in custody of the State, although this court should examine documents from the Minnesota jail-credit manipulations, in which the RI prosecutor participated. The exhaustion issue is purely factual, and Petitioner's Declaration lists actual, provable facts plus witnesses willing to demonstrate that he is permanently banished from all RI courts.*

PETITIONER, PRO SE,

Arthur D'Amario, III

cc:
Gerald J. Coyne

*To avoid a potential time-bar, Petitioner is writing his Objection not having yet received the State's documentation that is forthcoming.