SCANNED

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

U.S. DISTRICT COURT
PORTLAND, MAINE
RECEIVED AND FILED

2005 DEC 12 P 12: 34

BY DEPUTY CLERK

ARTHUR D'AMARIO III

v.

PATRICK C. LYNCH

PETITIONER'S DECLARATION SUPPORTING HIS
OBJECTION TO RESPONDENT'S MOTION TO DISMISS

I, Arthur D'Amario III, depose and say that:

1. As the attached BOP records prove, on Aug. 2, 2000, I was ordered immediately released from prison, but hours later, that dual jail credit was revoked. Through 5 U.S.C. § 552(a), I've obtained Justice Dept. reports establishing RI Asst. Attorney General Alan Goulart contacted Minnesota federal authorities on several occaisions and influenced them to corrupt my jail credit into consecutive sentences to keep me out of Rhode Island an additional 5½ years. Those records are in storage in Arizona. Mr. Goulart contacted the U.S. Attorneys in Minneapolis and Newark, NJ, as well as Mary Benning (or her predecessor), who was legal counsel for FMC Rochester.

2. I wass arrested on my state offense on Dec. 28, 1995. I have been in custody every day since then, either incarcerated or on supervised probation. My last day of freedom without restraints was Dec. 27, 1995. All my federal and state sentences have been run consecutively.

3. My RI state convictions were used to enhance the s.r. revocation term imposed June 8, 2005, by Judge Young. If I prevailed in this action, my RI federal sentence would have to be reduced by at least one month.

4. On Aug. 30, 1995, I appeared before the RI Judicial Nominating Comn. and successfully opposed Judge Israel's bid for the vacancy on the RI Supreme Court. Prior to my appearance, Judge Israel and Judge DeRobbio tried to run me out of the Powers Building to silence me. An attorney overheard the judges and then-Court Administrator John H. Barrette cursing me that evening.

5. Upon being defeated for the vacancy, Judge Israel made putting me in jail his priority, and personally banned me from "all" courts without ever explaining why or allowing an appeal of his order. Several lawyers and court clerks have told me Judge Israel was already at that time mentally ill, mean, cruel and unfit for the bench.

Scanned by: [handwritten initials]
Folder Location: Mon
File Name: dbh04cv232.1
Names of Attachments, if any:

6. On Sept. 3, 1998, Judge Israel and/or Judge DeRobbio read in the Providence Journal that Debra Sellers of Attleboro, MA, had procured a no-contact order against me. Those two judges then schemed to write and mail Sellers anonymous, crank love letters on at least two occaisions, which they had delivered by a RI State Police detective to falsely implicate me. This was the basis for my RI probation-revocation of Feb. 19, 1999. I had to be banished from RI forever as part of the judge's coverup. The crank letters were used to support a joke search warrant allowing police to raid and ransack my home on Feb. 8, 1999. Not surprisingly, Judge DeRobbio issued the warrant himself.

7. My state lawyer for the revocation, Ed Roy, actively covered up the fact that I did not write the crank letters and made me the fall guy. I've been told by a RI State Senator that Ed Roy is the ultimate "insider" lawyer in Providence and a major player in the state's Good Old Boy network. Since setting me up at the revocation in 2000, and committing perjury against me a dozen times at my Camden, NJ, trial in 2001, Roy has been richly rewarded as follows: (a) he was paid 200% of his standard ACJA fee for not speaking to me in the 16 months of his misrepresentation; (b) he was appointed Federal Public Defender for RI shortly after Judge Irenas in Camden made a finding that Roy rendered ineffective assistance in my cases; (c) he was promised a RI state judgship after an apprenticeship in the Federal Defender's office. Roy disclosed the promise of a judgeship to his client Arthur Jordan a year ago. Jordan was my cellmate last spring.

8. Several lawyers have told me I will never win a decision from any RI judge because of bias. They include C. Leonard O'Brien, Prof. Andrew Horwitz, and Charles Tamulevic, as well as the ex-Senator who personally investigated this judicial bias in 1995. Various RI Superior Court clerks have told me that the judges they are assigned to, including Judge Israel, are deliberately making wrong decisions in my cases and then laughing about it in chambers. One clerk said in 1999 that the judges got a picture of me and made it into a WANTED! poster, then circulated copies to every courtroom.

9. No lawyer will voluntarily represent me in RI because it is common knowledge that we can't win on any issue. None will even take my money.

I declare under penalty of perjury that the foregoing is true.

PETITIONER, PRO SE,

Executed on: Dec. 8, 2005.

Arthur D'Amario, III

CERTIFICATION

I certify that on Dec. 8, 2005, I mailed a copy to Gerald J. Coyne at 150 S. Main St,, Providence, RI 02903, by prepaid mail.

petitioner, pro se

**Supreme Court**
No. 05-220-M.P.

In re: Arthur D'Amario, III :

**ORDER**

Arthur D'Amario, III, (D'Amario) petitions this Court, *pro se*, for a writ of mandamus and for a waiver of the applicable filing fee. For the following reasons, we decline to consider the merits of the petitions.

In postconviction application captioned ***Arthur D'Amario, III v. State of Rhode Island***, PM/88-4430 C.A., a Superior Court justice, after concluding that D'Amario had violated Super. R. Civ. P. Rule 11, issued an order, on March 7, 1996, imposing a $500.00 civil fine, which the justice ordered paid forthwith to the Rhode Island General Treasurer. The court there indicated that until the fine was paid, with the exception of an appeal from the Rule 11 sanction, D'Amario would be "barred and prohibited from…filing *any* pleading or paper in *any* State Court proceeding (*emphasis supplied*)" thereafter. In our opinion, this March 7, 1996 order, which is still operative, in essence made D'Amario's payment of the fine in full a condition of his entitlement to file anything with, or to seek relief of *any* kind from, this or *any* other court in this state. As of the date of the instant Order, the fine remains unpaid and the condition therefore unsatisfied. Accordingly, we will not consider the merits of the instant petitions.

The petition for writ of mandamus and petitioner's application to waive the filing fee are denied.

Entered as an Order of this Court this ***17th*** day of ***October 2005***.

By Order,

Clerk

COPY

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES

v. No. CR 99-024S

ARTHUR D'AMARIO

MOTION TO MODIFY SUPERVISED RELEASE TERMS

Pursuant to Title 18, Section 3583, Defendant moves to modify the special condition of supervised release prohibiting him from entering the district, so that he may move into an apartment in Smithfield on or about Jan. 12, 2005. Defendant requests the appointment of attorney Charles Tamuleviz under Section 3006A to assist with this motion, and refers the court to his attached memorandum.

DEFENDANT, PRO SE,

[signature] 12-15-04
Arthur D'Amario III
1488 W. Camino de la Oca
Green Valley, AZ 85614

CERTIFICATION

I certify that on Dec. 15, 2004, I mailed copies of this Motion & Memorandum to AUSA Adi Goldstein, 50 Kennedy Plaza, Prov., RI 02903; and to Charles Tamuleviz, 144 Westminster St., Prov., RI 02903.

[signature]
defendant, pro se

Motion Denied

[signature], USDJ
1/12/05

15

DEFENDANT'S EXHIBIT K

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

United States of America,
Plaintiff,

v. : CR No 99-024S

Arthur D'Amario, III,
Defendant.

**ORDER**

The Defendant's Motion to Modify Release Conditions is DENIED and the following is hereby Ordered:

1. Defendant shall be granted a grace period until March 30, 2005, to comply with the Court's order to reside at and participate in a community corrections program at the Coolidge House Comprehensive Sanctions Center in Boston, Massachusetts, as ordered on November 9, 2004. No further extensions of time for reporting will be granted. Defendant is required, per the Court's previous Order, to reside at Coolidge House for six months. Time on supervised release prior to his reporting to Coolidge House shall not be credited towards service of the six months community corrections condition.

2. As ordered on September 30, 2003, **Defendant is reminded that he is prohibited from returning to Rhode Island** during the period of supervised release without the permission of the Court. Defendant's compliance with the conditions of supervised release and the community corrections condition shall be reviewed within ninety days from commencement of the community correction period.

3. Defendant shall provide details of his travel itinerary and arrival date at Coolidge House to U.S. Probation Officer Brian Pletcher no later than March 25, 2005, and contact the

-124

probation officer within twenty-four hours of arrival at the Coolidge House Comprehensive Sanctions Center.

4. Defendant is reminded of all other conditions of supervised release contained in applicable Orders (attached) and his obligation to comply with them.

ORDER:

By: Barbara Barletta
Deputy Clerk

ENTER:

William E. Smith
U.S. District Judge
Date: 3/16/05

## SPECIAL CONDITIONS OF SUPERVISION

**In addition, the defendant shall comply with the following special conditions: The following special conditions are re imposed on the defendant as part of his supervised release conditions in each criminal matter.**

1.) The defendant shall participate in a mental health program for evaluation and/or treatment as directed by the U.S. Probation Office, and shall remain in treatment until satisfactorily discharged and with the approval of the U.S. Probation Office.

2.) The defendant shall have no oral or written contact with any government officials or civil litigants without prior consent from the U.S. Probation Office and the Court.

3.) **The defendant is prohibited from returning to Rhode Island** during the period of supervised release without permission from the U.S. Probation Office and the Court.

# SPECIAL CONDITION(S) OF SUPERVISION

**In addition, the defendant shall comply with the following special condition(s):**

1.) The defendant shall participate in a mental health program for evaluation and/or treatment as directed by the U.S. Probation Office, and shall remain in treatment until satisfactorily discharged and with the approval of the U.S. Probation Office.

2.) The defendant shall have no oral or written contact with any government officials or civil litigants without prior consent from the U.S. Probation Office and the Court.

3.) The defendant is prohibited from returning to Rhode Island during the period of supervised release without permission from the U.S. Probation Office and the Court.

4.) The defendant shall reside at the Coolidge House Comprehensive Sanction Center the first four months of his supervised release.

The defendant shall participate in and satisfactorily complete a program of mental health treatment, as directed by the probation officer, until such time as the defendant is released from the program by the probation officer. The defendant shall pay for the cost of treatment to the extent he is able as determined by the probation officer.

DOJ NCRO 001

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

Kansas City Regional Office
Tower II, 8th Floor
400 State Avenue
Kansas City, Kansas 66101-2492

NUNC PRO TUNC

August 2, 2000

| | | |
|---|---|---|
| Inmate's Name | : | D'AMARIO, ARTHUR |
| Register Number | : | 02989-070 |
| Offense | : | 18 U.S.C. 922(g)(1) Felon in Possession of a Firearm. |
| Sentence | : | 18 Months |
| Judicial District | : | District of Rhode Island |
| Sentence Begins | : | March 10, 2000 |
| Release Date | : | |
| Designated Facility | : | Rhode Island Department of Corrections. |

Warden:
Federal Medical Center
Rochester, MN 55904

We are providing this designation to affect concurrent state and federal sentences, and have designated the above facility for service of the federal term.

REVIEWED AND RELEASED BY

If this designation provides additional prior custody/jail time credit as outlined in Bureau of Prisons Policy, please apply.

NCRO LEGAL OFFICE

Sincerely,

(for)
G.L. Hershberger, Regional Director

BP-S381.058 INMATE ACTIVITY RECORD CDFRM May 94
U.S. DEPARTMENT OF JUSTICE FEDERAL BUREAU OF PRISONS

| NAME | REGISTER NUMBER | INSTITUTION |
|---|---|---|
| D'AMARIO, Arthur | 02989-070 | FMC, Rochester, MN |

| Date | Issue | Initials | Staff Members |
|---|---|---|---|
| 07-11-2000 | Arrived at FMC Rochester, MN | BK | Betty Karsten |

ACTION

| Date | Issue | Initials | Staff Members |
|---|---|---|---|
| 7/21/00 | Reclassification | MS | Sachs/Cuomo/Lewis |

ACTION

7-1-01 GCT
Low/IN

| Date | Issue | Initials | Staff Members |
|---|---|---|---|
| 7/24/00 | Scheduled for file review 7:30PM. MSachs | | |

ACTION

Failed to appear! MS

| Date | Issue | Initials | Staff Members |
|---|---|---|---|
| 7/31/00 | | | |

ACTION

Central file reviewed. MS

X [signature] ____

| Date | Issue | Initials | Staff Members |
|---|---|---|---|
| 8/2/00 | Notified by ISM Mr. D'Amario was given dual jail | | |

ACTION

8:00 AM credit; therefore, he is to be released immediately. MSachs

8/2/00 Release address 6 White Dove Trail, Smithfield, RI 02917 MSachs

8/2/00 Given telephone call to mother regarding release plans. MS

(This form may be replicated via WP) Replaces BP-381(58) of OCT 88

8/2/00 Risk Assessment Panel held. MSachs

8/2/00 Notified by ISM original sentence computation was
2:00 PM accurate. Release date to remain 7/1/01. MSachs

ATTACHMENT "E" (1 page)